IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:06CR100-1 |
| | ) | |
| ANTHONY CHARLES CARTER | ) | |

**MEMORANDUM ORDER**

This matter is before the Court on Defendant Anthony Charles Carter's pro se Emergency Motion for Compassionate Release Under 18 U.S.C. § 3582(c)(1)(A) [Doc. #128]. He is concerned about exposure to COVID-19 because of his medical conditions. For the reasons explained below, his motion is denied.

On September 26, 2006, Carter was sentenced to 360 months' imprisonment. Pursuant to 18 U.S.C. § 3582(c)(1)(A), "[t]he court may not modify a term of imprisonment once it has been imposed except", as is relevant here, "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier". Carter claims to have "made his request to the warden, and waited the waiting period of 30 days", but he did not provide the date, content, or a copy of his request to the warden or the date the warden received the request. Without that information, it cannot be determined that Carter has, indeed, complied with these procedural requirements.

Even if Carter had exhausted his administrative remedies, he has not met his burden of showing extraordinary and compelling reasons warranting relief. See 18 U.S.C. § 3582(c)(1)(A)(i); see also United States v. McCoy, 981 F.3d 271, 284 (4th Cir. 2020) (finding "no 'applicable' policy statement governing compassionate-release motions filed by defendants under the recently amended § 3582(c)(1)(A)," "empower[ing]" courts "to consider any extraordinary and compelling reason for release that a defendant might raise") (citation omitted); U.S. Sentencing Guideline § 1B1.13, Application n.1 (explaining circumstances found to be extraordinary and compelling) cited in McCoy, 981 F.3d at 282 n.7 (noting that § 1B1.13 "remains helpful guidance even when motions are filed by defendants").

Carter claims to suffer from "severe heart and blood pressure issues, along with severe allergy and sinus problems", "making him a high risk for fatality if he were to get the virus." He also identifies "lung problems", anemia, hyperlipidemia, and "High obesity" as among his medical conditions. The medical records that Carter submitted evidence hypertension as of June 2020, but no other diagnoses recognized by the Centers for Disease Control and Prevention ("CDC") as increasing or possibly increasing his risk of severe illness from the virus that causes COVID-19. See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (updated Dec. 29, 2020) (identifying, as is relevant here, chronic obstructive pulmonary disease, heart conditions (such as heart failure, coronary artery disease, or cardiomyopathies), obesity, and severe obesity as conditions increasing the risk of severe illness for

2

adults of any age and hypertension as possibly increasing the risk of severe illness). For example, a 2009 chest x-ray was conducted after Carter complained of a "new onset of palpitations and dyspnea on exertion", but the results revealed "clear" lungs and "stable" cardiac findings, and a July 2018 exam noted "Pulmonary" "Auscultation" as "Clear to Auscultation" with no wheezing. There were "Abnormal ECG[s]" in January 2015 and a "Borderline ECG" in December 2015; however, in July 2018 while being evaluated in the chronic care clinic, his cardiac evaluation is noted as showing "Regular Rate and Rhythm" and "Normal S1 and S2". There is no mention of obesity or Carter's height and weight from which his body mass index could be calculated. In sum, of Carter's documented health conditions, only hypertension is recognized as possibly increasing his risk of severe illness were he to contract COVID-19.

Carter claims that it is impossible to practice frequent handwashing, sterilizing of surfaces, and social distancing at his prison facility and that he is exposed to COVID-19 because of the "negligence of prison staff" but does not elaborate further. He is housed at FCI Williamsburg, https://www.bop.gov/mobile/find_inmate/index.jsp#inmate_results, where eighty-six of its 1,362 inmates were reported to be infected with COVID-19 as of January 5, 2021, while thirty-four had recovered, https://www.bop.gov/locations/institutions/wil/, https://www.bop.gov/coronavirus/ (also reporting eight staff members presently infected and no deaths). Carter has provided no release plan, so it cannot be determined that he would be better

3

protected from contracting the virus that causes COVID-19 were he to be released.[1]

To the extent that Carter relies on his medical conditions outside the context of COVID-19 as extraordinary and compelling reasons, he has not alleged or evidenced that he is unable to receive necessary medical care in the custody of the Bureau of Prisons or that any serious condition substantially diminishes his ability to provide self-care in the prison environment. See, e.g., U.S. Sentencing Guideline § 1B1.13, Application n.1(A).

For the reasons explained above, IT IS HEREBY ORDERED that Defendant Anthony Charles Carter's pro se Emergency Motion for Compassionate Release Under 18 U.S.C. § 3582(c)(1)(A) [Doc. #128] is DENIED.

This the 6th day of January, 2021.

/s/ N. Carlton Tilley, Jr.
Senior United States District Judge

---

[1] As of the filing of this Order, two COVID-19 vaccines have been granted emergency use authorization and have begun being administered throughout the country.